May it please the Court, Your Honors, I am Vicki Whitney of the State Attorney General's Office, and I will be arguing the aspect of the Valdivia appeal concerning United States v. Comito. And Anne Johnson will be arguing the aspect of the appeal dealing with Proposition 9, Marcy's Law. I've also reserved three minutes for rebuttal, so I'll try and watch my clock, since I don't think the yellow lights are going to come on for me. So the two of you have an aggregate of three minutes, or you each have three minutes? I think we're each reserving three minutes, is what we've let the clerk know. Okay. Your Honors, reliability... Why don't you put 12 minutes on her clock? That's what you've allocated, right? Yes, it is, Your Honor. Okay. You're on. Okay. Your Honors, reliability is a linchpin of confrontation. Statements squarely within established hearsay exceptions possess the imprimatur of judicial and legislative experience, and that fact must weigh heavily in the assessment of reliability for constitutional certitude. The State here simply seeks to avail itself of the firmly rooted hearsay exceptions that both the judiciary and the legislature have endorsed. This approach in parole revocation hearings is not only reasonable, but it is consistent with United States Supreme Court law, and this circuit's analysis in United States v. Hall. There are three issues and aspects to this appeal. Let me ask you a question right there. Is it the governor's position that the State of California could revoke parole based on a scientific report without authentication by the author? Your Honor, this court has, in fact, allowed that in United States v. Williams. It has allowed that to occur. However, the State's position in this case is that it certainly depends on the report, and in particular, whether it meets sort of all those buzzwords of becoming a business records exception to the hearsay rule. And if, in fact, a record such as a parole report that details all aspects of a parolee's reporting and activities to the parole officer, that could constitute a business records exception to the hearsay rule. And in that circumstance, yes, the State's position is it is admissible without having to engage in the balancing approach under United States v. Camino. Where do you get that from? That comes from a couple of places. First of all, there are three circuits in the country that have confronted that issue and have decided that. Okay, but we've got Camito, Walker, and Simmons, which, so far as I know, remain our law. Correct. And based on the, of course, Crawford, Melendez, all the recent stuff, it doesn't change the fact that a parole hearing is not a criminal proceeding. It's a separate beast. And the balancing test seems to be the governing rule in our circuit, and the Supreme Court has never gainsaid that, has it? The Supreme Court has, in fact, never decided the issue of the role of hearsay exceptions. And, Your Honor, this Court in United States v. Camito did not decide that either. The closest to it. No, but it did not require, when you have an issue of this nature, it required you to apply the balancing test, because it recognized that this is an unusual confluence of a confrontation right, which, of course, is guaranteed in a criminal proceeding, not guaranteed in a parole hearing. On the other hand, there's an efficiency involved. You've got a lot of people involved. You've got a whole separate issue. There's an attempt to try to provide fairness to the potential parolee, and yet,  I guess what I'm trying to understand is, is there anything in Morrissey or any other case that requires us to reconsider Camito, Walker, or Simmons, which I understand to be controlling? Well, Your Honor, I think, first of all, in United States v. Camito, and in Simmons, and in Walker, what this Court dealt with in those cases was what we've referred to as simple hearsay, and it was hearsay not subject to an exception. And this Court in United States v. Camito was very clear that it was simply deciding the context of the issue before it, which was an unsworn verbal statement. And this Court, subsequent to United States v. Camito, in United States v. Hall, signaled an approach that is consistent with what the State advocates here, and with what the other three circuits in this country have decided, which is when it falls within a firmly rooted hearsay exception, it does possess the imprimatur of the judiciary and the legislature in reliability terms. So you're asking us to carve out from the, we'll call them the three cases, rather than keep referring to all of them, to carve out from those cases a commonly recognized hearsay exception, exception, to the normal balancing test. Is that what you're asking? What the State is asking for, Your Honors, is that this Court confirm that longstanding or firmly rooted hearsay exceptions that meet the guarantees as in criminal cases for admissibility purposes, that those exceptions be permitted to be used by the State in parole revocation hearings, which, as Your Honor has noted, carry far less procedural nuances or requirements than a criminal prosecution. But you do agree that Camito, we'll call it the three cases, do not require us to do that. You're asking us to create a new branch of that, if you will. Yes. The State is asking this Court to decide an issue that Camito did not, and that this Court in United States v. Hall signaled that this Court would agree with, and that is that where there are longstanding or firmly rooted hearsay exceptions, that the State can avail itself of those for purposes of parole revocation hearings. So just to be sure, I'm absolutely clear on this. If there is a hearsay exception which would be acceptable under the criminal law and could be routinely introduced in a criminal proceeding, you're saying that per se, you don't have to do a Camito or a three cases balancing act at all. There is a nuance there, Your Honor, to that statement, and that is, well, from the outset, obviously the Crawford case did change in the criminal context the notion of testimonial hearsay. Now, what that exactly means, the United States Supreme Court has not affirmatively defined. It's not been sort of open. More this week, perhaps. Yes, but what this Court has signaled in, again, in United States v. Hall is where you have those longstanding hearsay exceptions, and there are some that have been decided by the U.S. Supreme Court as those longstanding hearsay exceptions, such as business records, such as statements made for the treatment, for medical treatment purposes, dying declarations, excited utterances, things of that nature that already carry with it based on the credibility, that those be permitted, the State be permitted to use those. In a criminal proceeding, the government has the obligation to prove beyond a reasonable doubt. In a parole hearing, it's a little bit different, and yet you still have the liberty of an individual involved, and that's why Camito and its other, the progeny or predecessors, actually, have come up with this balancing test, because the burdens are different there, but the effect on the life of the incarcerated person is every bit as real, perhaps even more so, because in some cases of the unanticipated nature of it, a rival, somebody that's angry at them in jail or whatever, there are a lot of perils involved. And while I appreciate the government's position, certainly from an efficiency perspective, I'm troubled with why we should abandon this balancing, which seems to be a now rather time-tested way of dealing with this complex issue, when the burden of proof is different than it would be in a criminal setting. Why should we abandon that? Your Honor, the State isn't advocating a complete abandonment of the balancing test in United States v. Camito. If there is a piece of hearsay that does not fall within one of these firmly-rooted exceptions, then, of course, the balancing occurs. It is only when there is a piece of hearsay evidence that falls within one of these firmly-rooted hearsay exceptions. Do you have a list of those? I can do them off the top of my head. I believe a portion of them. I gave a few of them earlier. The business records exception is one, and, in fact, in United States v. Martin, this Court looked to that as one of the basis for the exception. We had a business records case. I was involved in one. I think it was in Norwood or something like that. The Supreme Court vacated it based upon the possible implications of Menendez. We don't think there is any difference, but the reality is the Supreme Court seems to take exception to that, so we have an exception to the exception. Again, you get back to the issue of what is a fair balance. This is a human system. It's not a perfect system, but when you start listing these exceptions, the Supreme Court seems to be knocking out these exceptions as we go along. Is it as periodically changed by the Supreme Court, as periodically changed by our Court? It could be, in fact, Your Honor, because keep in mind this class action has been pending since 1994, and certainly it has no innate end point at this juncture. So certainly as the law changes, so too can the obligation. That happens in any aspect of a proceeding, whether it be a parole revocation hearing, probation, or a criminal procedure. I would note, however, that the Court in Crawford talked about testimonial hearsay exceptions, and, of course, we don't know what the Supreme Court may do this week, but that was further delineated in the Davis case that came after Crawford. That spoke to a 911 call and said that is not the kind of testimonial type of statement that a hearsay exception would not apply to or that the confrontation clause under the Sixth Amendment would keep out of a court. So it depends on the nature of the testimonial statement that's coming in. Moreover, even if you were to read Crawford to say that it would not give any more rights to parolees to have them not be able to use hearsay exceptions as per Crawford, what Crawford didn't do, and the Court was specific about this, was talk about non-testimonial hearsay. And when it didn't do that, what it left intact was the ability still to do under Ohio v. Roberts the notion of proceeding forward on non-testimonial hearsay, and that aspect would definitely, in our case, elevate the rights of the parolees to not be able to, for the State to not be able to use those exceptions, when at this juncture, as indicated in Davis and in Crawford itself, by its narrow nature, the fact that you cannot use it here, but you can in criminal prosecutions, would certainly defy Morrissey and its command, that in no way, shape, or form should a parole revocation rise to the same level or equate in any way to a criminal prosecution. Your Honor, I think I'm just about six seconds out of... Go ahead. I did want to point the Court to just a quick notion of some of the failings underlying here, and I think it's important to note that the report itself and the district court judge's basically rubber stamping of the order was based entirely on inadmissible evidence and that sort of thing. Certainly we know that for purposes of parole revocation hearings, you must have reliable evidence. The evidence code doesn't necessarily apply, but it was to have applied to the motion hearing that these parties engaged in, excuse me, in the district court, and it did not. There are some very, very glaring errors in the record that show, for example, overcoming objections to a lack of authenticity of recorded transcriptions or transcriptions of recorded hearings. That was bypassed, the authentication requirement, by simply taking judicial notice of the transcripts. There's no premise in the evidence code for that to be circumvented, and there were key errors associated with those determinations on the facts made then. That's more than a few seconds. I'm sorry. She's pretty tightly confined her argument to hearsay exception versus comedo balancing. Do you want to step in at this time? Yes, Your Honor. Okay. 15 minutes on the clock. 15 minutes on the clock, please. Thank you, Your Honor. 15 minutes on the clock. You've got 14, 20. There you go. Thank you. Good morning, Your Honor. May it please the Court. Ernest Galvan for the Plaintiff Class in Valdivia. Third, I'm going to treat the issues a little separately between the legal question, what should happen to comedo, and what should happen to the remedial parts of the district court's order, which weren't discussed too much in the argument so far. The touchstone of the remedial part of the district court's order, which is that the hearing officers need more training and a system of assessment, those are firmly grounded in the court's and the special master's duty to bring this class action to a termination and a close. What the special master found, and he found it in findings that are not disputed by the State here, regardless of the evidentiary disputes as to other findings, he found in the findings that aren't disputed that the policies and procedures issued to comply with confrontation rights as required by the injunction were inadequate. And based on the special master's own observations, there was confusion and inconsistency and error in their application in the field. And in order to bring this class action to a close, in other words, to bring the State into compliance with the Constitution so that an injunction is no longer necessary, it was necessary for the special master to recommend and the court to order modest further remedial measures. And regardless of what happens with the legal issue as to Comito, those should be affirmed because they were certainly not an abuse of discretion and they're consistent with the court's duty to bring a case like this to a close as soon as possible. Going back to the legal issue, can I just ask you just one question? Which of you is going to argue the 3044 issue in RUFO? Are you going to do that? Okay. I won't interrupt you with that, then. Thank you, Your Honor. 17 years ago, this Court received the same request that the State makes here in United States v. Martin. The government asked there that the Court should hold some items of evidence, quote, so inherently reliable that they may be introduced in any revocation hearing, end quote. It's Martin at 313. The Court declined that request, and in declining it, the Court said, quote, arbitrariness is achieved just as surely by the incremental creation of blanket exceptions as by the outright abandonment of fair procedure. Footnote number nine in Martin. The State's position here is even more extreme than what the government wanted in Martin. In Martin, the government just wanted inherent reliability for urinalysis tests. Here, the government is going at least for the 27 wide-ranging, firmly rooted hearsay exceptions in F.R.E. 803 and 804. It's more than a blanket. This is a tarp big enough to cover and suffocate the whole process. You've got to be careful when you talk about tarp these days. Yes, Your Honor. Well, if they're good enough to convict people, send them to jail for life or even to execution, why are they so arbitrary? We're not saying they're arbitrary. In fact, we're saying in our briefing they're certainly relevant to what the hearing officer has to do. We've never said in this case that the hearing officer has to do anything. But if the State can show that something falls close to a long-rooted hearsay exception and it bears the right hallmarks, like it's a business record recorded in the normal course of business, that goes into the balance, and that reduces the good cause. Let me tell you my problem to begin with, balance. It's a very — it's a metaphor. It suggests scales. And what are the weights being weighed? It seems I just don't get it. The weights being weighed vary case by case. Well, what are they? They are what's — how important is this evidence to a decision that might send the individual back to prison? That's one. If it's very important, does that make it more admissible or less admissible? It makes it less admissible. It makes the showing — The more important it is, the less admissible. Yeah. Well, the more that the person's liberty turns on this piece of unconfronted hearsay, the more the government has to have a good reason for not bringing the live witness. That's the balance that Morrissey requires and the balance that this Court's cases have always required. Well, I don't read balance in the Morrissey way you do. Comito does use the phrase. Morrissey says that the process should be flexible. It says that the accused should be presented with the witnesses against him for confrontation unless good cause is found to dispense with confrontation. I think that implies a balance. But the tried-and-true practice of the criminal law is found where you don't need confrontation. Well, after Crawford, if the statement is testimonial, that's no longer true. In criminal procedure, if the statement is testimonial, then it doesn't rely — there's only one permissible test of reliability, and that's confrontation. But here, this is a much more informal process. And the command of Morrissey not to equate this with the criminal process, it works both ways. In other words, it instructs that this is a separate type of proceeding, that the evidence is different, that it is in no way to be compared with criminal procedure. And the analysis that the State is offering, which is let's dissect it and compare whether each element is more or less than what's available in criminal procedure, it can't work for the reasons that Judge Smith said, which is, well, then what happens to the proof beyond a reasonable doubt? What happens to the jury trial? How can you compare one piece without the context of all the protections that are missing? So if you were representing a parolee whose parole was — the State was attempting to revoke, and their evidence consisted of a scientific report that a substance found in his home, pursuant to a routine officer, parole officer inspection, was in fact heroin, you would say you don't need to call the person who did the testing in, that this is fine? I would be — I would have to look at the circumstances. And there are two cases of this Court that bracket the circumstances. There's U.S. v. Martin and last — 2008's U.S. v. Perez. And what I would have to reckon with is I have a hearing officer who's going to apply a conditional confrontation right. And in order to get that scientist in for cross-examination, I'm going to have to show that it would serve a purpose other than merely authenticating the report. This is your report. You wrote it down in the course of Ordinary Business. I'd have to show, essentially, there's something wrong with that report. There's some question in this case as to whether the sample was adulterated or the right procedures were followed. That's what distinguishes parole revocation from a criminal trial. So your knee-jerk reaction would not be to point to Crawford? It would not. It would not avail me. There's no circuit in which that would avail me anything in a parole revocation case. I would have to demonstrate that on balance my client's need to confront that person, that scientist on these facts, overwhelms the government's burden of putting the person on an airplane or setting up a video link or whatever. It's a case-by-case analysis that defense counsel has to face. And that's another reason why yes. Before you go on with that, I want to clarify one thing. You talked about Martin. And what I understood you to say was that before I want to say Comito, but it's Comito, I guess, right? Before that was decided that the government had made the same argument, in effect, only more so, is what it's doing right now. Do you view Comito as saying that, you know, we're not dealing with a tabula rasa here. The law is Comito. And unless there's a change in Comito, that's what we're stuck by. And you can't even make that argument. Is that what your position is? Or is this still an open issue from your perspective? For the Ninth Circuit, this is not an open issue. Because of Comito and its predecessors. And its predecessors. And Martin. And Comito discusses Martin. It says at 1151, the government told us in Martin that if something comes in as a business record, leaves your analysis test, done in the ordinary course, that that's the end of our analysis. So for purposes of this panel, it's your position that unless we have authority under Miller or something like that, that we have no authority to really change Comito. Because this issue has already been decided. And the balancing test of Comito is what controls in this issue. Is that correct? Yes. If push came to shove, it would be up to an en banc panel. Yeah, that's why I say, Miller, you know that if we have a Supreme Court ruling or some other situation that changes the ruling so substantially that it's effectively overruled, then we can't do anything about Comito. And I gather you're saying that's what we're dealing with here. We're not starting from scratch. We're dealing with a long bit of litigation. You've got Comito. That's the law of our circuit. We are bound by the law of our circuit. The idea that you can use generally recognized hearsay exceptions is really we're wasting our time, basically, you're saying. Is that your position? Well, no offense to the government, of course, but that's your position, is it not? Yes, that Comito is the law of the circuit and that it's fully consistent with Morrissey and there's no reason to revisit it. And it doesn't restrict the government from using hearsay exceptions to bolster reliability within that balance. And that's why when you answered Judge Hawkins' question, you didn't immediately say Crawford because you were going back to the concept that, no, those things don't really matter in this circuit because we go back to Comito and we look at the balancing test. We don't look to what the case law about criminal confrontation issues are because we go with a balancing test. Is that correct? Yes, Your Honor. And that's universally true in every circuit that's been faced with whether Crawford applies to parole, supervised release or probation revocation. They have all said, no, it doesn't. The confrontation right in Morrissey has another source and it's undertaken in a different way. And if I might add, this appeal is a particularly inappropriate vehicle, even if the Court were inclined to reconsider Comito in some way or carve out an exception to it. This is a class action that resulted in an injunction broadly defining procedures to apply to State revocation cases. This is not a case like Martin or Comito or Simmons where you had the facts before you of a particular revocation charge and the Court could look and see how the case-by-case factors play out in that case. That's how the law of confrontation should move if it's going to move. It shouldn't move in a case like this, which is simply where there are no facts. There are no facts regarding any particular violation in this case. And so it's an inappropriate vehicle to go from the harbingers or cues that the State is pointing to and say let's change the law based on those. So your view is, I gather, that to the degree that there is a well-established hearsay exception, that maybe makes the balancing test easier because people understand it, it has some common sense behind it, but only in that sense are these hearsay exceptions useful. That is correct, Your Honor. And the distinction between our position and I think what Morrissey requires and Comito requires and the State's position is whether the government's reason for not producing the witness and whether the other factors, including the severity of the sanction, is this the only evidence that would send the person back, get considered at all. Because in the rule that the State is attempting to write, as soon as you find a hearsay exception, the analysis stops. This could be the only piece of evidence. This could be a person who themselves was trying to avoid a parole revocation. I mean, the reality is that my clients, parolees, tend to hang out with other parolees and get in fights and arguments with them. The police come along. There's somebody on the sidewalk who says I just got beat up by a Joe parolee. And the police officer takes that note. He comes into the parole revocation hearing and he says, well, I got an excited utterance from a person on the street who says Mr. Parolee beat him up. Well, under the State's rule, that comes in automatically, no consideration as to whether there's any other evidence, anything about the circumstances and no chance for defense counsel to ask the witness, well, are you on parole yourself? Was there a fight going on and you wanted to avoid being arrested? All the ordinary purposes of cross-examination to examine bias and motive of a witness and credibility are all dispensed with. And that's not the rule of Morrissey. Roberts. Professor Younger would suggest that the utterance would have to be preceded by oh, my God. Thank you for your argument. Thank you, Your Honor. Very well done. Thank you. Ms. Johnson. Good morning, Your Honors. May it please the Court. Anne Johnson with Hanson Bridget for the Appellants, the State of California. And I'm going to be addressing, I would like to reserve, also reserve three minutes for rebuttal, and I'll be addressing the Prop 9 issues. You're on a 12-minute clock. Thank you. Go right ahead. The State is here to correct an important legal error the District Court made  to modify the statute of limitations. And to modify the stipulated injunction entered in this case in 2004. The State's motion was based on passage of a new State law through the voter initiative in 2008 that defined State parole revocation procedures the State believes are constitutional. Did Judge Carlton ever make a finding that the way in which parole revocation hearings were being conducted in California violated fundamental constitutional rights? Judge Carlton did rule on a partial summary judgment motion that the unitary parole revocation system that existed in 2002, which did not provide for two separate hearings, unlike the portion of Marcy's law that we're dealing with now, which provides for a final hearing, all-in-one hearing at the end within 45 days. The short answer is he made that finding with respect to parole revocation procedures which are not extant. That's correct, and not proposed by Marcy's law. Marcy's law proposes the same two-hearing procedure that the stipulated injunction proposes, but with some differences. In fact, Marcy's law provides for the time to be counted for those hearings to happen to be counted from arrest, which is actually an earlier date from the date that it's counted under stipulated injunction, and it provides for those days in calendar days, not business days. So Marcy's law can actually provide for hearings to occur sooner than the current stipulated injunction. And Marcy's law does not go back to the old unitary system. Is it your view that the government met its burden to establish that there was a statute of limitations under RUFO before the district judge? Yes, Your Honor. I believe that we did that as a matter of law because there's no dispute that a subsequent state law that dealt with the substance of the injunction was passed. And so I believe that the Court erred as a matter of law when it failed to grapple with the meaning of the passage of that substantive state law. And your view is that the correct method to have been used by the district judge was to basically go through each of the elements of I guess we'll call it Prop 9, it's 3044 I guess now in the statute, and indicate why each element at variance with the decree was or was not compliant with appropriate constitutional and statutory law, right? Well, I think the first part of the analysis, in fact, the Court did do some aspect of the first part of the analysis, which was to determine in the first instance whether there was, in fact, any conflict between elements of Marcy's law and elements of the stipulated injunction. And there is one issue on appeal, which is it found that 3044B was in conflict and we have disputed that finding of a conflict. So there are elements of Prop 9, the Penal Code Section 3044, which both parties agree are different than the stipulated injunction. And we believe with regard to the timing of the preliminary hearing and the final parole are actually more favorable. The Penal Code 3044 is more favorable than what's provided in the stipulated injunction. So there's some clear areas where there are differences. There are areas where there are not differences. The Court found areas where there were not conflicts, and those portions are not on appeal. And then there is one that is on appeal where we disagree that the Court found a conflict. I don't know whether my colleagues agree, but I, for one, would be really grateful for input from both parties as to what areas you want us to focus on, you know, because you say there are some areas where everybody seems to agree. Obviously, with the litigation, there's some you disagree on. But we really need to speak to specifics. If, hypothetically, we send it back to the district judge, we need to be able to tell the district judge, we want you to focus on this and these issues because it's such a broad point. We just can't say, you know, hold a hearing about 3044 and do X. We'd like to be more specific if we get to that. So can you address what is the area where you feel that this Court needs to speak on the 3044 issue? Okay, Your Honors. On page 13 of our opening brief, we tried our best to outline what the Court had decided with respect to where conflicts existed or did not exist. I want to emphasize that the Court didn't reach the question of whether where there were conflicts, whether Marcy's law, those portions were constitutional or not. And that was in part because the plaintiffs below urged the Court not to reach the question of the constitutionality of Penal Code Section 3044. And we don't believe that the constitutionality of Penal Code Section 3044 is a question that's actually before this Court. We believe that's something that does need to be determined by the trial court, and that's, in fact, an issue that would need to be determined upon remand. So you're saying you want us to review this not in terms of its constitutionality as to any particular point, but as to the federalism and comedy issue generally. Is that correct? That's correct, Your Honor. We believe that what happened here is that the Court basically terminated its analysis prematurely because it had a misapprehension of the law. It misread RUFO the same way the district court in the David B. v. McDonald case that was decided by the Seventh Circuit misread RUFO by saying, I don't need to look at a subsequent change in state law. I only would need to look at a subsequent change in federal law. And, therefore, I'm not even going to consider whether Penal Code Section 3044 or any of its parts are constitutional and represent constitutional state proclamation procedures. Do you agree that it is the state's burden specifically to show significant changes of circumstances that warrant a change in the decree? Yes, Your Honor, and I think the fact of the passage of a subsequent state law that ---- Okay, but you're speaking in a general sense. You've got a very long-running battle here, but you have a decree. It is in force. It has enormous impact. That doesn't get changed, I think you will agree, unless the state bears the burden to show that 3044 requires the change, right? 3044 requires the change, Your Honor, if it is constitutional as the state has asserted and asserts in this Court and below. The Court did not reach the question of whether ---- And you've told us the Court didn't reach that. So if there's no constitutional issue that was reached, then how do we reach it? I'm not suggesting you should reach the issue of whether 3044 is constitutional. What I think this Court needs to do is correct the district court's error in its categorical ruling that a subsequent change in substantive state law can never justify modification of a federal consent decree. Okay, but isn't that almost an advisory opinion? I mean, the reality is we've got to deal with a real case for controversy. And here, if you bear the burden to show why 3044 requires a change, the constitutional issue was not reached below, but it requires a constitutional change in order to change the decree, then why do we have a live issue here? We're going to say back on a general basis we think you ought to go back and think about this again, but we're not going to talk about specific constitutional requirements, which is the very basis that you have to show in order to have the district court review it in the first place. The district court said in its order below, quote, the defendants appear to suggest that Proposition 9 offers a constitutionally adequate alternative for remedying the deficiencies in the parole revocation process that the court held were present in 2002. Without more, this does not merit modification of the decree. So the court ruled below that regardless of whether Penal Code Section 3044 was constitutional, it did not have to consider it. So we didn't get the court to address the merits. It has been our position below and we made arguments below about why Penal Code Section 3044 is constitutional. The court misreading RUFO, disregarding this court's precedent in Clark v. Coy and making the same mistake that was made by the district court in the David B. rule to correct this mistake that this court made. Do you want us to just tell the district court that it has an obligation to consider the constitutionality of the interplay of 3044 and the decree? We believe that this case should be remanded with an instruction to the court regarding what the correct law is under RUFO where there's a subsequent change in substantive state law. And that rule of law, as stated in David B., was, quote, a change of state law may justify or even require a modification of a consent decree, unless a federal law independent of the decree requires the parties to continue as before. We believe the Seventh Circuit stated the law correctly, that the district court below did not apply that law correctly, and this should be remanded for a consideration of the constitutionality of Section 3044 in light of the correct rule that should be applied. The reason it's important to correct this rule of law is because of principles, policy considerations that the Supreme Court made clear in RUFO when it said that allowing for modification of federal institutional consent decrees is particularly important because, quote, such decrees reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions. It continued, quote, to refuse modification of a decree is to bind all future officers of the state, regardless of their view of the necessity of the relief from one or more provisions of a decree that might not have been entered had the matter been litigated to its conclusion. The Supreme Court in Horn v. Flores emphasized, quote, if a federal consent decree is not limited to reasonable and necessary implementations of federal law, which we believe is the case, the stipulated injunction in this case, it may improperly deprive future officials of their designated legislative and executive powers. And that's the mistake the Court made below. To categorically deny consideration of this enactment, the enactment of Penal Code Section 3044, is to strip the people of the state of their lawmaking authority regarding state parole revocation procedures, potentially in perpetuity. And RUFO and Horn v. Flores says that is not what is supposed to happen. Okay. Mr. Holtz. Good morning, Your Honors. May it please the Court. My name is Jeffrey Holtz, and I'm appearing on behalf of the plaintiffs and the appellees. Before I get started, let me just note that I fractured two ribs on Saturday, so if you see me wince or grimace in pain, it's not because of the Court's questioning. It's not because of Judge Noonan's question. It's not. It's because I'm saving my Vicodin for after the argument. We're not going to take any testimony from you in light of the fact that you're under medication. Well, actually, actually, I'm not. I'm just in pain. One thing that I would like to address, or I'd like to start, is a point that the State has dodged at this argument, dodged in their briefing, and dodged in the briefing and argument below, which is exactly what their burden is to obtain the change in the injunction that they now seek. Judge Smith articulated it precisely correctly. It's stated in RUFO. The State had the burden below to prove that a modification of the consent decree that – I'm sorry – that there was a significant change in circumstances that warrants the modification of the consent decree that they sought. Is it your position, Mr. Holtz, that the State had the opportunity to make that showing and failed to do so? That is exactly right. And on review of Judge Carlton's determination of precisely that, it is abuse of discretion. And under this Court's Jeff D. decision, it's actually a heightened deference, considering the fact – Can I ask just a practical question here that's troubling me? Maybe you can help me with it. The original Valdivia injunction dealt with a parole revocation process which doesn't exist anymore. Is that right? Well – Or at least has been modified to one extent or another by the action of the people of California in connection with Prop 9. The original injunction, the current injunction, which is still in place, was the result of a court finding in 2002 that the prior process was unconstitutional. The court ordered a remedy. The State came to the court and said, boy, we would like some guidance, please, on what needs to be included in the remedy you have ordered. The State and the plaintiffs began negotiations on the eve of trial, and we entered into the injunction. So it is true that the injunction was initially targeted toward the prior system. Now, in the current motion that's before this Court, we actually, the plaintiffs actually, first sought relief from the court. When Prop 9 was enacted, we contacted the State's counsel and said, boy, this conflicts with the injunction. What are your plans? We need to think this through. The response they gave us was, we are implementing Proposition 9, period. So we actually moved Judge Carlton for an order enforcing the injunction over the new State law, classic supremacy clause. A Federal court order trumps a new contrary State law. That provision of Judge Carlton's order, I don't think, has been appealed. What the State then did was they asked for quite a long continuance. They asked for a three-month continuance. And at that time, we assumed, well, the State must be putting together new comprehensive policies and procedures to replace those that are currently in existence. They're 200 pages long. This is an enormous system. Ten thousand of these proceedings occur every month. And it is a summary process that has to be completed within a very short time. It cannot devolve into chaos. What the State presented, instead of a comprehensive plan that they were proposing as an alternative, was they just showed Judge Carlton the new statute and said, there's been a new statute. Please modify the injunction. What Judge Carlton held and all he held was, that's not enough. You have to show me more than that before I'm going to throw out an enormous, complicated system that's been in the works for four years and replace it with something that I guess we're just going to make up as we go along. Okay. All this is really important, I mean, in this procedural aspect. I mean, the State is certainly right under Clark and Ruffo and, gosh, I would say probably also Cary, Hook, you name it. There are lots of other cases that indicate that if there's a change and you've got a decree there where there's a conflict, the court has to take it into consideration. It's important to me to know whether, in fact, the district court has considered it. Now, the impression I'm getting from you is that it was the plaintiffs that raised the issue in the first place, that the State's response was the new regulations, basically just saying, here it is, implemented. The district court considered that, didn't see any constitutional issues and said, no problem. So I gather your position is, res judicata is probably the wrong word here, but in effect res judicata, you had your day, State, you're out of luck. Well, yes and no. It is true that our position is you have the burden, State of California, to come in and make a sufficient showing of why you want to change this comprehensive injunction and what you want to change it with. And Judge Carlton held you have not made that showing. Okay. Let's talk about a practical thing. I mean, the reality is, as you well point out, there are lots of these going on. The 10,000 a month, you said, that's going on. Correct. I mean, it's a huge number. All over the State. We don't want chaos here. There, apparently, everybody agrees there are some conflicts. Doesn't it make sense for us to send this part back, not the 2008 part, but the 2009 part, send it back to him and say, look, figure this out. Look at the implementation of Prop 9 and then get back to us at that point. As it stands right now, it sounds like you've got these two totally irreconcilable approaches that has to be resolved. What's wrong with that? Well, there's nothing wrong with that, per se. It's simply unnecessary. This is where I wanted to address your earlier question, Judge Smith, about some sort of res judicata type principle. There is nothing precluding the State from coming back to Judge Carlton tomorrow and doing it right. In other words, I don't think this Court has to remand anything. They can simply affirm on the ground that when you came to Judge Carlton and simply handed him the text of the statute and nothing more, that was not a sufficient showing under RUFO. That did not show, in and of itself, a significant change warranting modification of this enormously comprehensive system. They can come back tomorrow. Even if this Court were to affirm today, there's nothing preventing them from coming back tomorrow with an alternative system that actually might work. If they think they can craft a comprehensive system to handle 10,000 proceedings a month with Prop 9 as its premise, which would be a huge shift from the current 10,000 proceedings to 10,000 proceedings a month, which would be a huge shift for the attorneys in the process for a huge number of the class members, whereas now attorneys serve a critical function, they can come back and say, now we've got one. We'll work with them. We continually work with the defendants. So you're committing to the Court, then, you're not going to raise preclusion issues and anything like that, that they can come back at any time and make the same argument to Judge Carlton that they're doing with respect to this case before the Court and the 2009 issue? Correct. I'm not saying we would accept flat out without debate what they do present. I'm saying we would not raise procedural preclusion. I'm talking about the threshold, that if you go back, you're not going to say, well, you've had your day in court. You're out of here. Correct. I don't think there's any case law that says you get one chance to modify an injunction, and if you don't make the showing then, you're precluded forever. We are not making that position. Do I hear correctly, and tell me if I'm not hearing correctly, that there are some things in the conflict, if you will, between Prop 9 and the injunction that both sides agree can be married? Well, yes. I agree. For example. Let me finish my question. Sure. That's kind of a sub part of it. You agree to that. Yes. But that there are some other aspects where the conflict, if there is some, between Prop 9 and the Valdivia injunction where there's disagreement about whether the two could be married. That's a fair assessment of the situation. Okay. Now, and one example, let me just pick it up. Ms. Johnson mentioned that the preliminary hearing, the first hearing under Prop 9, is actually shorter, more favorable toward the class members than the current injunction. There is no reason they can't implement that today. Judge Carlton did not preclude them from it. I'm really, I don't understand why they haven't done it, since under State law, they're Let me ask this question, which occurs to me as a result of what I've heard here today. Is there any possibility that this case could be mediated? Yes. And to be quite honest, it currently is being mediated continually. We have an assigned special master. In fact, he's in the audience today, Mr. Chase Reveland. And we are constantly working with the defendants, both of us working with the special master independently and together. In fact, Judge Carlton just on Friday, three days ago, issued an order holding ordering that several aspects of the injunction no longer need to be monitored. They're working just fine now. Or the monitoring has been reduced dramatically. The State has made progress on those, so the plaintiffs now just let those go. They're working. So we are in continuous discussion, revisions to adjust where needed, and working toward substantial compliance. Well, now, do you agree that the State law has changed? The State law has changed, has it not? A new State statute was passed. I do not agree that it has changed because it simply mirrors the State law that was in effect before Prop 9 in all material respects. So I don't agree that the State law has, in fact, changed in a material manner. A new State statute was enacted. Remember, before Prop 9 and before the injunction, State law said, well, it said two things. In the statutory State law, Penal Code 3056 and 3060, it said parolees can be revoked at will. You can just be thrown back into prison with no hearing whatsoever. That predated Morrissey and Fager. Well, that doesn't say that. I'm sorry. What's that? What? The new statute doesn't say that. The new statute does not say that. However, preexisting regulations did provide for certain procedures that were in, for all intents and purposes, substantially similar to the new statute. There was one difference in that the new statute does provide for a preliminary hearing within 15 days. And as we noted below and as we've noted in our briefing here, we're not contesting that. Well, then, if the State law has changed, isn't that a reason to change the injunction? It may be. But it isn't necessarily. This is where RUFO comes into play. The Supremacy Clause says that a default is the injunction trumps a State law. It is true that if the State law, unless it embodies the Federal Constitution, because supremacy principles hold precisely that. The Supreme Court dealt with this issue in Frueh v. Hawkins in 2004, and then this was that a consent decree is enforceable even if it includes provisions that are not specifically required by the Constitution or a Federal law. So the Federal, a Federal consent decree in and of itself is, has the force and effect of Federal law. Those cases deal with changes in the law of the State. I mean, the whole problem here is the legislative authority of the people has been exercised and changed the circumstance. Judge Carlton doesn't seem to recognize that. Well, there's two points. First of all, as I noted, we don't think there was a material change in circumstances, but nevertheless, Judge Carlton did consider the fact of the new State law and looked at all the surrounding circumstances, sitting inequity, as he does under Rule 60B, and he determined that this change, this just merely passing a new statute in and of itself, is not enough. Well, wasn't that an error? Why wasn't that an error? I mean, you can argue, of course, that nothing changed, but it seems to me obvious something did change. I agree something did change, but Judge Carlton did not hold, contrary to the State's argument, that a change in State law can never, under any circumstances, warrant a modification under RUFO. He simply took the fact of the new statute, applied the RUFO standard, and held that this change in and of itself would leave us with chaos. In and of itself, it is not sufficient to warrant going any further under RUFO. Well, now, let me pursue it. It seems to me the change does admit a hearsay that's not admitted under your present system. Doesn't it do that? That's what a plain reading of the statute would say. However, this — well, what the State argued below is that it actually does not change the terms of the injunction. And Judge Carlton, in his ruling, accepted that reading of the statute that the State proposed. So you get back to the RUFO burden of proof issue, do you not, whether the State meets its burden of proof to convince him that there's a Federal constitutional requirement where 209 — or rather, 9 overrides the injunction? Correct. Look, the question before this Court is whether Judge Carlton abused his discretion in holding that they're showing there's a new statute. That alone required him or even warranted a modification of the injunction. He held that standing alone, that's not enough. You can come back tomorrow and give me more, but just in and of itself, I'm not going to replace a comprehensive system providing due process to 10,000 parolees a month with chaos. That is the absolute anathema of due process. A quick question. I've got an excerpt here of a statement by Judge Carlton, and I won't read it all. But he's saying, what I found was the parties had agreed to get rid of this lawsuit. There clearly were some procedures that were violative of the Federal Constitution and they said, look, we're going to solve this whole problem, we the plaintiffs will give away some of our rights in order to gain other rights. This, I call this, if you guys are happy, I'm happy. When did that occur? That, Judge Carlton was, to be quite honest, being a little flip there. There actually was a comprehensive fairness hearing in 2004. My question is very simple. When did that statement, was it made? He made that statement in the 2009 hearing. He never, to my knowledge, actually made that statement. He was considering the effect of the proposition? Correct. That's all I needed to know. Okay. Thank you. Thank you, Your Honors. Who wants to go first with their three minutes? Up to you. We've just heard this. Why don't you go? Thank you, Your Honors. A couple of points. It is not true, as Judge Nunes pointed out, that the Penal Code Section 3044 mirrors the prior State law. That's just a misstatement of the law. What did you tell Judge Carlton when you were arguing? I'm sorry, Your Honors. What did I tell him? Well, I mean, I just heard it. The State didn't argue that there was a change. Is that true? No, I said it is a misstatement by the appellees that there has not been a change in State law in the Penal Code Section. That's not the question. Okay. The question is what did the State argue with Judge Carlton? We argued below and we argued in our papers at length about the fact that Marcy's law, Penal Code Section 3044, changed the law, was constitutional. We set forth why we believed that the provisions of Penal Code Section 3044 were constitutional, and we said that because a constitutional law that enacts State parole revocation procedures has been enacted, it should, the stipulated injunction, which never found that all of its provisions were necessary to remedy a constitutional violation, should be modified to allow for enactment for this new constitutional State law. And Judge Carlton said, he made the quote that I quoted earlier, and he also said the very last sentence before his conclusion of his order below was, quote, under RUFO and related authority, it cannot be the case that conflict with a new State law suffices to merit modification of the decree. The Court refused to entertain the idea that even if Penal Code Section 3044 was constitutional, as we said it was and set forth in our papers below, that he had to consider it to be a significant change of circumstance. He made a mistake of law, and under the abuse of discretion standard, a mistake of law is abuse of discretion automatically. I want to be sure I understand the State's position. Your opponent, Mr. Holtz, argues that under RUFO and the other case law, that when you have Prop 9 passed, 3044 passed, to the degree that there is a conflicting regimen under the decree, there is no automatic confluence where 3044 takes over. The State has the burden, from their perspective and under RUFO, to come in and say, Your Honor, we got this decree. There is a conflict between this section, this section, this section, and this section, or however many there might be, between the statute and the decree. We believe that there's a constitutional problem with this one, this one, this one, and this one. You rule on that, and then we can decide. Is that your understanding of the way it's supposed to work? That's what we asked the Court to do, Your Honor. Okay. So your problem is you asked the Court to do that. The Court refused to do it. That's correct, Your Honor. All right. Okay. Ms. Whitney. Last but not least, Your Honors, there's a couple of points that I do want to make in the rebuttal. The first has to do with the statement that counsel made with respect to the evidence and how this was simply a procedure to move quickly forward to try and get compliance. Let's keep in mind this case has been pending again since 1994. There is no innate endpoint here. And expediency is never an excuse to completely disregard rules of evidence that were disregarded in the motion hearing below. There was an improper shifting of the burden of proof to the defendants to come forward and show evidence of things when it was the plaintiff's motion for a violation of the permanent injunction, a violation that was never found to have occurred. In addition, on the second point, and that being the notion of using hearsay exceptions, if, in fact, it was so clear that United States v. Comito controlled in all circumstances, it would have been not in the district court's order to say that, in fact, it left undecided the notion of how hearsay exceptions factor into that balancing equation eliminated in Comito. Many cases, including this court, have subsequent to Comito indicated, again, I have to point the court to United States v. Hall, where this court specifically said, quote, several pieces of the evidence are admissible under hearsay exceptions. That included specifically a paragraph in Hall that discussed it which focused on records from a hospital, focused on records of a parole agent kept on the parolee, and focused on documents that included statements from the out-of-court declarant. But, counsel, even under Hall, can't, using the balancing test, can't the court say, okay, this is a traditional hearsay exception. Applying the balancing test, we find that these records fit in a certain category because it's a common exception. There's no big deal in this particular case and so on and so on. It's still in the balancing test, isn't it? Well, it is not in this case, and I'll tell you why. Because in the district court order, in the findings, it made it clear that the legal conclusions reached was that reliability is not a factor on the government's side of the balance. That was specifically ordered as a legal conclusion below. That legal conclusion completely disregards this Court's setting that as a factor in Simmons, Martin, Comito, Hall, and most recently in United States v. Perez. So the district court order took away the reliability aspect and the utilization of that on the government's side of the balance below, which is why it was erroneous. Thank you. Roberts. All right. Thank all of you for your arguments. It's a very interesting case. It's submitted for decision, and the Court will stand in recess for the day.
judges: Noonan, Hawkins, Smith M.